NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VINCENT TIRONE,<br><br>          Plaintiff,<br><br>          v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>          Defendant. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 08-CV-4751 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon appeal by Plaintiff Vincent Tirone ("Plaintiff") seeking review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") for the period November 25, 2004 through February 11, 2008. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and decides this matter without oral argument. See Fed. R. Civ. P. 78.  For the foregoing reasons, Plaintiff's appeal is **granted in part**, **denied in part**, and this matter is **remanded**.

I.   BACKGROUND[1]

    A.   *Factual Background*

Plaintiff is a 49-year old diabetic with a high school education.  Although previously

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

employed as a stagehand at Madison Square Garden for ten years, Plaintiff has not worked since November 26, 2004. Plaintiff alleges that he had to stop working due to extreme pain arising from multiple impairments that he began experiencing in 2003.

   i.  Medical Records

In January 2002, Plaintiff was diagnosed with diabetes mellitus and prescribed several medications. In February 2003, Plaintiff was diagnosed with a respiratory infection. During a visit to Dr. Peter Symington on June 20, 2003, Plaintiff complained of chronic foot pain, which Dr. Symington attributed to the constant pressure placed upon his feet by his body weight. In December 2003, Plaintiff was diagnosed with polyneuropathy by neurologist Dr. Ann Miller. On November 1, 2004, Plaintiff was diagnosed with insomnia and complained to Dr. Symington about symptoms he was experiencing due to a reduction in his intake of prescription pain medications. An MRI taken by Dr. Daniel Herera revealed mild bursitis in Plaintiff's left shoulder.

On November 25, 2004, Plaintiff officially stopped working. Five months later, on April 27, 2005, Dr. Pritesh Shah diagnosed Plaintiff with major depression. On May 11, 2005, Plaintiff was informed that he had sleep apnea and began treatment with Nasal Continuous Pressure Airway Pressure ("CPAP"). In September 2006, Plaintiff complained to Dr. Miller about his pain and reported that he occasionally worked as a short order cook. On January 16, 2007, Plaintiff visited Dr. Miller with complaints of tiredness and was placed back on Duragesic patches. When it became clear that he could not handle the high dosage of medication, he was advised to reduce his intake of Percocet. Plaintiff was admitted to the Englewood Hospital and Medical Center on March 17, 2007 for drug withdrawal and visual hallucinations. At that time it

was reported that Plaintiff was on an extreme medication regimen. On November 29, 2007, a new report by Dr. Shah pertaining to Plaintiff's mental capacity revealed that Plaintiff suffered from moderate sleep and concentration issues.

            ii.        <u>Medical Evaluations</u>

Dr. Symington treated Plaintiff for more than two years beginning in January 2002 for diabetes, diabetic peripheral neuropathy, hypertension, and chronic pain. At the time of his last visit on November 22, 2004, Dr. Symington reported that Plaintiff's diabetes was "better controlled." Dr. Symington declined, however, to offer an opinion regarding Plaintiff's ability to perform work-related activities. Dr. Symington further noted that Plaintiff was being treated by a neurologist for neuropathy and an orthopedist for bursitis in his left shoulder.

Plaintiff's treating psychiatrist, Dr. Herera, reported that Plaintiff was under his care for bursitis of the left shoulder. Dr. Herera opined that Plaintiff was able to lift and carry a maximum of ten pounds. Furthermore, although Plaintiff complained about severe pain in his feet and legs, Dr. Herera found that Plaintiff's ability to sit, stand, or walk was not limited. Dr. Herera found only that Plaintiff would have difficulty lifting heavy objects and that he had a limited range of motion due to bursitis.

Plaintiff's treating neurologist, Dr. Miller, treated him for painful polyneuropathy secondary to diabetes mellitus and restless leg syndrome and reported several limitations on Plaintiff's work-related activities. Dr. Miller reported that Plaintiff suffered from diabetes for seven years, accompanied by stabbing, aching, and burning pain in both feet with numbness and leg cramps. Dr. Miller also reported that Plaintiff's pain was tolerable when undergoing his medication regimen, although he noted that an increase in dosage led to increased side effects.

Dr. Miller opined that Plaintiff was limited to lifting and carrying a maximum of ten pounds and was limited to standing and/or walking for less than two hours in an eight-hour workday, with frequent rest breaks. Dr. Miller further reported that sitting for too long could result in increased leg cramps, and that using foot controls for more than two hours could intensify Plaintiff's symptoms. Following Plaintiff's visit on May 6, 2005, Dr. Miller reported that there had been no decrease in his pain.

Upon request for corrective action by the Quality Assurance Unit, Dr. Miller submitted reports dated May 15 and December 13, 2007, assessing Plaintiff's ability to perform work-related activities. Dr. Miller reported that Plaintiff had poor balance, but that he was limited only in performing tasks that resulted in sensory loss to the legs, such as bending and kneeling.

Plaintiff's treating psychiatrist, Dr. Shah, reported that Plaintiff was under his care beginning in April 2005 for major depression. Dr. Shah opined that Plaintiff had no limitations on his ability to perform work-related activities. Dr. Shah further noted that Plaintiff was being treated for sleep apnea with a CPAP machine. In 2007, Dr. Shah reported that Plaintiff suffered from serious limitations in his ability to do work-related activities, particularly in maintaining "attention/concentration."

Dr. Theophanis Pavlou of Pascack Valley Hospital Sleep Disorder Center submitted treatment records revealing that claimant underwent sleep studies on May 11, 2005. The studies demonstrated a severe obstructive sleep apnea syndrome and mild periodic limb movement syndrome. Dr. Pavlou ordered Plaintiff to use a CPAP machine. On June 6, 2005, Plaintiff

reported that he was experiencing good results with the machine and that his restless leg syndrome had improved.

### iii.    Testimony

Plaintiff testified at a hearing before ALJ Dennis O'Leary on December 13, 2007. Plaintiff stated that he had suffered extreme pains in his feet since being diagnosed with diabetes in 2003. Plaintiff testified that his feet typically begin hurting after standing for thirty minutes, and that his feet become numb after sitting for an hour. Plaintiff also testified that he is most comfortable when lying down with his feet elevated. He noted that he has made various attempts to remedy his condition, including taking prescribed medications, seeing recommended specialists, and visiting a pain management clinic. Plaintiff admitted to being "basically" addicted to several painkillers, and stated that he continued to take them in increased doses. Plaintiff also testified to his apparent belief that if he ceased taking the prescribed painkillers, he would not function normally. Plaintiff stated that he never checked into a drug rehabilitation program due to his belief that the doctors were slowly weaning him off the drugs.

### B.    *Procedural Background*

Plaintiff filed for DIB on January 12, 2005. His claim was denied both initially and on appeal. An application for a hearing was then filed by Plaintiff, and a hearing occurred on December 13, 2007 before ALJ O'Leary. The ALJ upheld the decision denying Plaintiff's benefits on February 11, 2008, and that decision was affirmed by the Appeals Council on August 1, 2008. Plaintiff then filed this appeal on September 23, 2008.

## II.     STANDARD OF REVIEW

### A.     *Scope of Review*

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., Williams v. Shalala, 507 U.S. 924 (1993). "Substantial evidence" means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Some types of evidence will not be "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g. that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Sec'y of HEW, 714 F.2d 287, 290 (3d Cir. 1983). "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001). Thus, substantial evidence may be slightly less than a preponderance. Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988). "The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)). In order to review the evidence, "a court must 'take

6

into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).  The ALJ has a corresponding duty to facilitate the court's review:  where the ALJ is faced with conflicting evidence, he must provide clear explanations for rejecting or discrediting a physician's opinion.  See Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986).  Additionally, "[the reviewing court] need[s] from the ALJ not only an expression of the evidence []he considered which supports the result, but also some indication of the evidence which was rejected."  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  Without such an indication by the ALJ, the reviewing court cannot conduct an accurate review of the matter since the court cannot determine whether the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter, 642 F. 2d at 705).  "The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

    B.  *Statutory Standard for Eligibility for DIB Benefits*

  A claimant's eligibility for benefits is governed by 42 U.S.C. § 405(g).  Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that she has not engaged in "substantial gainful activity" since the onset of the alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  Given that the claimant bears the burden of establishing these first two requirements, her failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there.  Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies his initial burdens he must provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments").  20 C.F.R. § 404.1520(d).  The ALJ is required to compare the combined effect of all of plaintiff's impairments with the Listing of Impairments.  20 C.F.R.§ 404.1526(a).  This combination is mandatory upon all levels of adjudication.  Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits.  20 C.F.R. § 404.1520(d).  If he cannot so demonstrate, the benefit eligibility analysis requires further scrutiny.  The fourth step of the analysis focuses on whether the claimant's RFC sufficiently permits him to resume his previous employment. 20 C.F.R. § 404.1520(e).  If the claimant is found to be capable to return to his previous line of work, then he is not "disabled" and not entitled to disability benefits.  Id.  Should the claimant be unable to return to his previous work, the analysis proceeds to step five.  At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work.  20 C.F.R. § 404.1520(f).  If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits.  Yuckert, 482 U.S. at 146-47 n.5.

  C.  *The Record Must Contain Objective Medical Evidence*

Under the Act, disability must be established by objective medical evidence.  "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."  42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section."  Id. Specifically, a finding that one is disabled

requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record:

> The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20 C.F.R. § 404.1529(c)(4).

Nevertheless, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

### III.  DISCUSSION

Plaintiff argues that the Commissioner's decision finding no disability should be reversed, or, alternatively, remanded, because: (1) the ALJ failed to combine all of Plaintiff's severe impairments at step three; (2) the ALJ did not engage in a proper analysis of Plaintiff's Residual Functional Capacity ("RFC") at step four; and (3) the ALJ's hypothetical question posed to the vocational expert ("VE") at step five did not include all of Plaintiff's "credibly established limitations." Because the Court finds that the ALJ properly combined all of

9

Plaintiff's severe impairments at step three and engaged in a proper evaluation of Plaintiff's RFC at step four, Plaintiff's appeal on these grounds is denied. Because the ALJ failed to properly include all of Plaintiff's credibility established limitations in his step five hypothetical, however, this matter is remanded solely on that basis.

      A.    *Step Three Claim*

Plaintiff first argues that the ALJ failed to combine all of his severe impairments as required in step three. At step three, a claimant's impairments must be combined and then compared to see if "in combination they are or are not equivalent in severity to one of the listed impairments." See Torres v. Comm'r of Soc. Sec., 279 Fed. App'x 149, 152 (3d Cir. 2008). Here, the ALJ properly considered Plaintiff's diabetes, bursitis, sleep apnea, hypertension and obesity. After acknowledging the need to combine and compare all impairments, the ALJ found that Plaintiff's combined impairments, specifically with obesity, did not meet or equal the criteria of any of the listed impairments or result in end organ damage. The ALJ also looked to the medical records to determine the severity of limitation imposed by Plaintiff's bursitis and found that no objective clinical evidence demonstrated a gross anatomical deformity or chronic joint pain and stiffness that would limit Plaintiff's ability to perform fine movements effectively. Accordingly, because the Court finds that the ALJ properly combined and compared Plaintiff's impairments at step three, Plaintiff's appeal on this basis is denied.

      B.    *Step Four Claim*

Plaintiff next argues that the ALJ failed to properly consider his subjective complaints of pain in making his RFC determination at step four. The ALJ must give serious consideration to the claimant's subjective complaints of pain, as well as to the seven factors relevant to claimant's

10

symptoms pursuant to 20 C.F.R. 404.1529(c)(3). The ALJ has discretion, however, to evaluate the credibility of the claimant in light of the objective medical findings set forth in the record. See Lacorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (holding that the "ALJ must determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it"). Accordingly, an "ALJ's assessment of a plaintiff's credibility is afforded great deference, because the ALJ is in the best position to evaluate the demeanor and attitude of the plaintiff." Rohrbaugh v. Astrue, 588 F. Supp. 2d 583, 592 (D. Del. 2008); see also Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).

Here, the ALJ gave proper consideration to Plaintiff's subjective complaints of pain. The ALJ cited specific instances where Plaintiff's complaints were undermined by both the medical record and his own descriptions of his daily activities. Plaintiff testified, for example, that he had not worked since the alleged onset date of his symptoms, but then reported to Dr. Miller that he temporarily worked as a short order cook. Additionally, Plaintiff gave conflicting stories with respect to the disappearance of his medicine prior to his March 2007 hospitalization for prescription drug withdrawal, stating first that he had left them in a hotel room, and later testifying that the medications went missing after he had visitors at his home.

The ALJ also found that the overall record does not support Plaintiff's complaints regarding the intensity of his impairments. The ALJ noted, for example, that despite Plaintiff's testimony claiming disabling pain and an inability to walk for extended periods, Plaintiff was able to: (1) travel independently by public transportation; (2) care for his daughter, as well as cook, clean, and shop; and (3) work as a short order cook. The ALJ found that Plaintiff could

11

perform sedentary work requiring an individual to stand and/or walk for a total of two hours.

Finally, Plaintiff's argument that the ALJ improperly suggested that his medications were due to a substance abuse problem instead of a legitimate medical need is without merit. The record reveals that the ALJ never suggested that Plaintiff's alleged substance abuse problem was the sole reason for his finding of no disability. Rather, the ALJ found that, absent prescription drug abuse, Plaintiff would have had no problem remembering and carrying out instructions, concentrating, and handling work-related stress. Furthermore, the ALJ's finding that Plaintiff did not meet the standard to show disability regardless of the alleged prescription substance abuse is supported by Dr. Miller's findings that Plaintiff's neuropathy medications only affected his ability to concentrate "at times." The ALJ found that this irregular impairment was not enough to contribute towards Plaintiff's disability analysis.

Accordingly, because the Court finds that the AJL properly considered Plaintiff's subjective complaints in making his RFC determination, Plaintiff's appeal on this ground is denied.

### C.     Step Five Claim

Plaintiff argues that the ALJ's hypothetical posed to the VE failed to include all of Plaintiff's "credibly established limitations," particularly the ALJ's finding that Plaintiff may have had a "moderate difficulty in sustaining concentration, persistence and pace." The Court agrees. A hypothetical posed by an ALJ must include all of a claimant's impairments. See Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004). Indeed, "where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a VE, the expert's response is not considered substantial evidence." See Burns v. Barnhart, 312

12

F.3d 113, 123 (3d Cir. 2002).  Furthermore, failure to include credibly established impairments in a  hypothetical "necessitate[s] a remand."  See Podedworny v. Harris, 745 F.2d 210, 219 (3d Cir. 1984).

Here, Dr. Shah and the ALJ recognized that Plaintiff had at least a "moderate difficulty in sustaining concentration, persistence and pace."  With respect to this limitation, however, the ALJ's hypothetical stated only that Plaintiff was limited to "simple and repetitive tasks."  In a similar case involving a claimant with credibly established problems in "concentration, persistence and pace," the Third Circuit found that the ALJ's use of "simple one or two-step tasks" was inadequate to adequately convey the claimant's mental deficiencies, and that "greater specificity" was required.  See Ramirez, 372 F.3d at 552; see also Burns, 312 F.3d at 123.  Here, Plaintiff's mental limitations, described by Dr. Shah as "seriously limited" and by the ALJ as a "moderate difficulty in sustaining concentration, persistence and pace," are similar to those of the claimants in Ramirez and Burns.  The ALJ's hypothetical, however, did not "specifically convey" these limitations, and instead described Plaintiff as merely limited to "simple and repetitive tasks."  Accordingly, because the Court finds that the ALJ's hypothetical did not properly include all of Plaintiff's credibly established mental limitations, this matter is remanded on this basis.  See, e.g., Podedworny, 745 F.2d at 219.

**IV.** C<small>ONCLUSION</small>

For the reasons stated, Plaintiff's appeal is **granted in part**, **denied in part**, and this matter shall be **remanded** for further proceedings consistent with this Opinion. An appropriate Order accompanies this Opinion.

                                                 S/ Dennis M. Cavanaugh
                                                 Dennis M. Cavanaugh, U.S.D.J.

Date:         August   11  , 2009
Orig.:        Clerk
cc:          All Counsel of Record
              File